This is a civil action (N.C. Code, 1931 [Michie], sec. 869) in the nature of a writ of quo warranto. The order of the Attorney-General was duly made granting Ralph C. Stephens the right to bring this action. The action is brought by plaintiff against the defendants to determine the right of defendant Paul S. Dowell to hold the position of clerk of the city court of Raleigh, N.C.
The plaintiff makes numerous allegations in his complaint, and succintly contends in his brief that the controversy "involves the question as to whether or not the commissioners of the city of Raleigh, after having elected plaintiff's relator as clerk of the city court of Raleigh and accepted and approved his official bond conditioned for his good behavior for a term of two years, had the power within said term to summarily, and without notice or hearing, remove the plaintiff's relator from the office of clerk of the city court of Raleigh, a court of record under a special statute, which statute provides that such commissioners may elect such clerk and approve his bond, but contains no provision for the removal of the clerk by said commissioners; such attempted removal having been moved and voted for by one commissioner because said clerk would not support a certain political candidate, and one other commissioner having voted for such removal upon the mistaken idea that said clerk was an employee in the department of the first commissioner and subject to dismissal by him, and the third commissioner having opposed the action; and where such action was falsely stated upon the record to have been taken on account of inattention to duty, which charge is admittedly wrongful and without any foundation; and the commissioners having refused to give relator any hearing or to expunge said record." The defendants demurred to the complaint upon the ground that the complaint does not state facts sufficient to constitute a cause of action. The grounds of the demurrer may be summarized as follows: That the statute referred to in the complaint as a basis of action gives to the commissioners of the city of Raleigh the power of appointment or election of a clerk of the city court of Raleigh, and that the plaintiff was so appointed to such position by the commissioners of the city of Raleigh, and that it follows as a matter of law that the power of removal is incident to or inherent in the appointing power, and that the power of removal may at any time be exercised by the appointing authority, with or without cause. Second, that the statute pleaded in *Page 557 
the complaint does not prescribe any term of office for the clerk of the city court, and that the plaintiff having been elected in pursuance thereof was not elected for any fixed term, and accordingly held the position at the will of the electing or appointing power. Third, that it is alleged in the complaint that the plaintiff was removed by action of the commissioners, and that the commissioners having the power to appoint and the power to remove were within their rights in so doing. Fourth, that even if the removal of the plaintiff was required to be made for cause only, which is denied as a matter of law, it appears from the complaint that the action of the commissioners in removing the plaintiff was taken after due assignment of cause, and that the sufficiency for such cause was a matter addressed solely to the judgment and discretion of the commissioners. Fifth, that the position or office which the plaintiff held was not a property right, and that there existed on the part of the plaintiff no contractual or property right of which he could not be deprived by action of the commissioners.
The court below sustained the demurrer and dismissed the action, to which plaintiff excepted, assigned error, and appealed to the Supreme Court. The necessary facts will be set forth in the opinion.
The city court of Raleigh was created a court of record by chapter 706 of the Public-Local Laws of 1913, amended by chapter 353, Public-Local Laws of 1915, and designated "The City Court of Raleigh," having civil and criminal jurisdiction. It is not a recorder's court. It is not referred to in the charter of the city of Raleigh, the two legislative enactments being entirely separate and distinct.
The statutes creating the court provide that the commissioners of the city of Raleigh shall elect the clerk of said court, and that he shall give a bond to be approved by the commissioners in the sum of $5,000, and that his salary shall be fixed by the commissioners and shall be paid in the same manner as the salary of the judge of the city court is paid, and defines his duties.
The commissioners are not given any authority, power, or control over the clerk of the city court, and there is no provision giving the commissioners any power to suspend, remove, or discharge him.
On 6 May, 1933, the commissioners of the city of Raleigh duly elected Ralph C. Stephens as clerk of the city court of Raleigh, and he thereupon duly qualified by taking the oath of office and by executing and delivering, as prescribed by statute, his bond in the sum of five thousand *Page 558 
($5,000) dollars, conditioned according to law for the faithful performance of the duties of his said office. The bond was made for the term of two years from his election in May, 1933, reciting that he was elected for said term, and the said bond was duly accepted and approved by the board of commissioners of the city of Raleigh, and is filed and held as one of the records of said city.
Said Stephens duly entered upon the discharge of his duties. On 9 June, 1934, the following was passed by the commissioners — two voting for and one against: "That Mr. Ralph C. Stephens be removed from his office as clerk of the city court on account of inattention to duty, and that his office be filled by the appointment of Mr. Paul S. Dowell, the present assistant clerk of the court, the change to take effect immediately."
It is alleged in the complaint that "The charge of inattention to duty was untrue and without foundation. No charge was at any time made against Stephens, except that set forth in his removal. Stephens was not given any notice of such contemplated action, nor was he given any opportunity to defend himself before said commissioners, either then or thereafter."
In McIntosh N.C. Practice and Procedure in Civil Cases, ch. 10, sec. 445, in part, is as follows: "A demurrer raises no issue of fact, since it admits the truth of all material facts which are properly pleaded. `For the purpose of presenting the legal question involved, a demurrer is construed as admitting relevant facts well pleaded, and ordinarily relevant inferences of fact necessarily deducible therefrom; but the principle is not extended to admitting conclusions or inferences of law, nor to admissions of fact when contrary to those of which the court is required to take judicial notice, and more especially when such opposing facts and conditions are declared and established by a valid statute applicable to and controlling the subject.'"
The demurrer admits that Ralph C. Stephens, with no notice and without an opportunity to be heard, was removed on account of inattention to duty, and Paul S. Dowell was appointed to fill his place, the change to takeeffect immediately. Did the city commissioners of Raleigh (a majority [two] voting for the removal) have the power and authority to do this, without giving the clerk notice of the charge against him and an opportunity to be heard? We think not, under the facts and circumstances of this case.
The record in this action recalls a decision of this Court in a stormy period of the State. James W. Wilson was a railroad commissioner. He was elected in 1893 by the General Assembly for a term of six years. He had done much to build the Western North Carolina Railroad. He did not belong to the same political party as Governor Daniel L. Russell. *Page 559 
He had an interest in Round Knob Hotel, an eating house on the railroad. The insinuation was that, as railroad commissioner, he was obtaining special favors from the railroad. Governor Russell wrote him giving him notice of the charges, which he contended were sufficient for removal under the act under which he held his office. Governor Russell said in his letter: "Under the law, the Governor has not only a right but is required to suspend a railroad commissioner who commits a breach of the statute, which has been cited, and this he may do, as in other cases of executive removals, without notice to the party interested; but I shall not pass judgment or decide this matter until you have had a full opportunity to be heard by way of denial or explanation or justification or other defense."Caldwell v. Wilson, 121 N.C. 428 (429). Mr. Wilson answered denying intoto, and as it appears from the record completely, all the charges in a long, carefully written letter, and in it called attention to (p. 436) "the 14th Amendment of the Constitution of the United States, which forbids any state to deprive a citizen of life, liberty, or property without due process of law." Governor Russell wrote Mr. Wilson that he was disqualified under the act and suspended him until the next General Assembly, appointing L. C. Caldwell, of Iredell County, to fill the vacancy. Mr. Wilson replied (p. 437): "In reply I will say that I shall disregard your order to suspend, but will continue to do business at the old stand until removed by a tribunal other than a self-constituted `Star Chamber.'" Caldwell brought an action quo warranto, State ex Rel. L. C. Caldwell v. James W. Wilson,121 N.C. 425. The opinion — a long one — was written byJustice Douglass. In it he says: "What is `due process of law' is generally difficult to define." At p. 469 it is said: "The defendant, taking under the act, holds subject to the act; and relying upon his contract is bound by all its provisions. One of its express provisions was the reserved right of the Legislature to remove, and the power and duty of the Governor to suspend under a given state of facts. This power of suspension, together with the necessary method of its enforcement, was assented to by the defendant in his acceptance of the office." . . . Faircloth, C. J., dissented, and said (p. 475): "Thus we see that the Governor suspends
whenever he deems proper and the Legislature removes at its will and pleasure, as an ex parte proceeding, the officer (commissioner) having no opportunity to be heard. This proceeding is at least a novelty, and so far as I remember is without precedent, certainly so in North Carolina. Such proceedings no doubt are found under some forms of government, but they are at variance with all fundamental rules of government in the United States of America. Those rules protect life, liberty, and property in the due administration of law. . . . (p. 480): I think the plaintiff's contention is injurious, subversive, and contrary to the organic law of our *Page 560 
system of government, and that it is unreasonable and unjust, and that the decisions of any court in any state, disregarding these principles, must soon fall under the condemnation of the legal mind in this country." The General Assembly of 1899, of opposite political persuasion to Governor Russell, refused to remove Wilson. Public Laws of 1899, p. 966.
Mial v. Ellington, 134 N.C. 131, overruling Hoke v. Henderson, 15 N.C. 1, is to the effect that: "An officer appointed for a definite time to a legislative office has no vested property therein or contract right thereto of which the Legislature cannot deprive him." That holding is sound, and does not in any way control the factual situation in this action. See Winslow v. Morton, 118 N.C. 486.
In Rathburn v. United States, Supreme Court Reporter, Vol. 55, No. 15, p. 869 (875), is the following: "The result of what we now have said is this: Whether the power of the President to remove an officer shall prevail over the authority of Congress to condition the power by fixing a definite term and precluding a removal except for cause will depend upon the character of the office; the Myers decision, affirming the power of the President alone to make the removal, is confined to purely executive officers; and as to officers of the kind here under consideration, we hold that no removal can be made during the prescribed term for which the officer is appointed, except for one or more of the causes named in the applicable statute. To the extent that, between the decision in the Myers case, which sustains the unrestrictable power of the President to remove purely executive officers, and our present decision that such power does not extend to an office such as that here involved, there shall remain a field of doubt, we leave such cases as may fall within it for future consideration and determination as they may arise."
The above action was brought by Samuel F. Rathburn, as executor of the estate of William E. Humphrey, deceased, against the United States, in which the court of claims certified questions to the United States Supreme Court. Plaintiff brought suit in the court of claims against the United States to recover a sum of money alleged to be due the deceased for salary as a Federal Trade Commissioner from 8 October, 1933, when the President undertook to remove him from office, to the time of his death on 14 February, 1934. The opinion was rendered 27 May, 1935.
The Constitution of North Carolina, Art. IV, sec. 32, is as follows: "Any clerk of the Supreme Court, or of the Superior Courts, or of such courts inferior to the Supreme Court as may be established by law, may be removed from office for mental or physical inability; the clerk of the Supreme Court by the Judges of said Court, the clerks of the Superior Courts by the judge riding in the district, and the clerks of such courts *Page 561 
inferior to the Supreme Court as may be established by law by the presiding officers of said courts. The clerks against whom proceedings are instituted shall receive notice thereof, accompanied by a copy of the cause alleged for his removal, at least ten days before the day appointed to act thereon, and the clerk shall be entitled to an appeal to the next term of the Superior Court, and thence to the Supreme Court, as provided in other cases of appeals."
In regard to municipal recorders' courts, N.C. Code, 1931 (Michie), sec. 1536, et seq. Section 1551, in part, is as follows: "The clerk of the recorder's court shall be elected by the governing body of the city or town. . . . Before entering upon the duties of his office, the clerk shall enter into a bond, with sufficient surety, in a sum to be fixed by the governing body of the municipality, not to exceed five thousand dollars, payable to the State, conditioned upon the true and faithful performance of his duties as such clerk and for the faithful accounting for and paying over of all money which may come into his hands by virtue of his office. The bond shall be approved by the governing body and shall be filed with the clerk of the Superior Court of the county. . . . The governing body of the municipality shall have the right to remove the clerk of the court, either for incapacity or for neglect of the duties of his office; and in case of a vacancy for any cause the office shall be filled in the manner hereinbefore provided."
It will be noted that the Constitution, supra, provides: "The clerks against whom proceedings are instituted shall receive notice thereof, accompanied by a copy of the cause alleged for his removal," etc. This is due process, and should have been at least persuasive on the commissioners in the present case.
In Burke v. Jenkins, 148 N.C. 25 (27), we find: "In 1 Dillon Mun. Corp. (4 Ed.), sec. 240, it is said: `The power to remove a corporateofficer from his office for reasonable and just cause is one of the common-law incidents of all corporations.' . . . (p. 28.) Such action could not be taken without notice and an opportunity to be heard, except where the officer is removable without cause at the will of the appointing power. And when the motion is allowable only for cause, the soundness of such cause is reviewable by the courts upon a quo warranto. (Citing numerous authorities.) But in this case there was the fullest notice given and opportunity to be heard and sufficient cause shown."
In Beaufort County v. Mayo, 207 N.C. 211 (214), speaking to the subject, it is said: "Notice and an opportunity to be heard is a fundamental principal of our jurisprudence. It is of vital importance and constitutes due process of law."
The charter of the city of Raleigh provides that "The commissioners of the city of Raleigh shall elect . . . a clerk of said court." If the *Page 562 
commissioners had a right to remove the clerk they had elected "on account of inattention to duty," notice and an opportunity to be heard should have been given him. This was not done — he was summarily dismissed and Paul S. Dowell appointed to fill the office, "the change to take effect immediately." We do not think, under the act in which the clerk was elected, the commissioners had the authority and power to summarily dismiss him without notice and an opportunity to be heard.
For the reasons given, the judgment of the court below is
Reversed.